## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | |
| ELLIOT STERLING | NO.20-00052-BAJ-RLB |

### ORDER

Before the Court are four motions to dismiss all or part of the Indictment (Doc. 1) pursuant to Federal Rule of Criminal Procedure ("Rule") 12[1] filed by *pro se* Defendant Elliot Sterling. *See* (Docs. 37, 56, 59, 74). The Motions are opposed. *See* (Docs. 58, 61, 70, 90). For the reasons described, the Motions are **DENIED**.

## I.  BACKGROUND

On August 3, 2020, the Federal Grand Jury returned a fourteen-count Indictment against Defendant Elliot Sterling alleging violations of wire fraud, financial aid fraud, and money laundering. *See* (Doc. 1). On March 16, 2021, the Court granted Defendant's Motion to Proceed Pro Se (Doc. 28), and later appointed stand-by counsel. (Doc. 39, Doc. 42).

On March 16, 2021, Defendant filed his first Motion to Dismiss, arguing that his due process rights under the Fifth Amendment were violated, that the

---

[1] Defendant's Motions to Dismiss were both filed "Pursuant to Rule 48 Rules." (Doc. 37, p. 1); (Doc. 59, p. 1). Defendant's first Motion to Quash was filed "Pursuant to Rule 117." (Doc. 56, p. 1). Defendant's second Motion to Quash merely states "Defendant hereby moves the Court to set Plaintiff's Complaint." (Doc. 74). All pretrial motions in criminal matters are governed by Federal Rule of Criminal Procedure ("Rule") 12.

Government produced irrelevant evidence, that his Sixth Amendment right to a speedy trial was violated, that the Government has violated its responsibility by prosecuting a case that cannot be proved beyond a reasonable doubt, and that the charges against him were brought in retaliation for his outspoken criticism of the Department of Justice. (Doc. 37, p. 2). Defendant urges that these alleged defects warrant the dismissal of the Indictment in its entirety. (*Id.*). The Motion is opposed. (Doc. 58).

On May 24, 2021, Defendant filed his first "Motion to Quash," arguing that the Government improperly charged him multiple times for the same offense. (Doc. 56, p. 2). The Motion is opposed. (Doc. 61).

On June 2, 2021, Defendant filed his second Motion to Dismiss, asserting that the Indictment should be dismissed because he "was told by the government this discovery had over 20,000 pages and it simply doesn't. . . . [Therefore,] this case needs to be dismissed because its tainted." (Doc. 59-1, p. 1). The Motion is opposed. (Doc. 70).

On June 21, 2021, Defendant filed a second "Motion to Quash," arguing that Count Fourteen of the Indictment should be dismissed. (Doc. 74, p. 1). The Motion is opposed. (Doc. 90).

## II.    DISCUSSION

Hearings are not necessary on any of Defendant's motions. "Evidentiary hearings are not granted as a matter of course, but are held only when the defendant alleges sufficient facts which, if proven, would justify relief." *United States v. Harrelson*, 705 F.2d 733, 737 (5th Cir. 1983). Because Defendant has not provided

2

"sufficiently definite, specific, detailed, and nonconjectural [allegations] to enable the court to conclude that a substantial claim is presented," a hearing is not required. *Id.*

## A. Defendant's First Motion to Dismiss

"The propriety of granting a motion to dismiss an indictment under [] Rule 12 by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact." *United States v. Miller,* 491 F.2d 638, 647 (5th Cir. 1974). Defendant's first Motion to Dismiss (Doc. 37) contains several conclusory factual allegations that Defendant believes warrant dismissal of the Indictment. The Court will address each in turn.

### i. Relevance of the Discovery

Defendant asserts that "eighty percent of the discovery has nothing to do with the charging document or true bill." (Doc. 37, p. 2). Even were this a valid reason to dismiss the Indictment, the Court addressed these arguments both in court on May 20, 2021, and in its Order denying Defendant's Motion for Relevance. *See* (Doc. 75). Therefore, the Court declines to dismiss the Indictment for the reasons previously provided.

### ii. Sixth Amendment

Defendant argues that his "six amendment [sic] was also violated with the attorney client relationship." (Doc. 37, p. 2). Specifically, Defendant alleges that "[t]he prosecutor is using methods from herself and the pro bono attorney for more time." (*Id.*).

The Sixth Amendment guarantees criminal defendants the right to a speedy and public trial. U.S. const. Amend. VI. This safeguard is amplified by the Speedy

Trial Act, 18 U.S.C. §§ 3161–3174, which "requires that a defendant be tried within seventy non-excludable days of Indictment. If more than seventy non-excludable days pass between the indictment and the trial, the 'indictment shall be dismissed on motion of the defendant.'" *United States v. Johnson*, 29 F.3d 940, 942 (5th Cir. 1994) (citing 18 U.S.C. § 3162(a)(2)). The Speedy Trial Act, however, provides several excludable periods of delay. For example, "the time between the filing of the motion and the hearing on that motion, even if a delay between the motion and the hearing is unreasonable," is excludable. *Johnson*, 29 F.3d at 942–43 (citing *Henderson v. United States*, 476 U.S. 321, 329–30 (1986)). Similarly, the Speedy Trial Act excludes any period of delay resulting "from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161(h)(1)(D). The Speedy Trial Act also considers whether to grant a continuance because "the case is so unusual or complex, due to . . . the nature of the prosecution . . . that it is unreasonable to expect adequate preparation for pretrial proceeding or for the trial itself within the time limits established by" the Speedy Trial Act. 18 U.S.C. § 3161(h)(7)(B)(ii).

The Speedy Trial Act explicitly provides that "[t]he defendant shall have the burden of supporting such motion." 18 U.S.C. § 3162(a)(2). Here, Defendant has not made any showing that the Speedy Trial Act has been violated. Further, several excludable periods of delay have been invoked in this case. For instance, prior counsel for Defendant filed a motion to continue the trial and to suspend the Speedy Trial Act provisions due to the complexity of the matter. (Doc. 18). That motion was granted on

October 21, 2020. *See* (Doc. 19). The Order declaring the case complex was never withdrawn. There have also been several other excludable periods of delay, including the time necessary to promptly dispose of the motions filed by Defendant.[2] *See* 18 U.S.C. § 3161(h)(1)(H) (excluding "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court."). Thus, Defendant has not established a violation of the Speedy Trial Act or the Sixth Amendment. Therefore, Defendant's Motion is denied on this basis.

### iii.   Prosecutorial Misconduct

Defendant argues that this case involves prosecutorial misconduct, in that the Government allegedly forced Defendant's former clients to "come forward [] with sworn statements accusing the prosecutor of bribing them to be a witness who is told to lie, forcing them to be a witness who is told to lie and using scare tactics for them to be a witness who is told to lie." (Doc. 37, p. 2).

"Evidentiary issues bearing on possible prosecutorial misconduct should normally be reserved for trial, and should not be determined on a pretrial motion to dismiss." *United States v. Bates*, 600 F.2d 505, 511 (5th Cir. 1979) (citing *Miller*,

---

[2] Excluding the motions addressed herein, the Defendant has filed the following motions:
- A motion to set a trial date. *See* (Doc. 51).
- A motion for the production of exculpatory and mitigating evidence. *See* (Doc. 52).
- A "motion for relevance." *See* (Doc. 53).
- A motion to suppress. *See* (Doc. 57).

In addition, the United States has filed the following motions:
- A motion to authenticate. *See* (Doc. 68).
- Two motions in limine. *See* (Docs. 69, 105).

491 F.2d at 647). The defendant in *Bates* claimed "that the prosecutor intimidated, coerced and induced potential defense witnesses not to testify for [defendant] or to change their statements to favor the government." *Id.* The United States Court of Appeals for the Fifth Circuit has instructed that these were "precisely the sort of factual questions best reserved for trial." *Id.* Therefore, the Court will reserve ruling on Defendant's claims until trial, at which time he will be permitted to cross-examine witnesses on these allegations.[3]

### iv.  Forfeiture Allegation

Defendant alleges that his assets were unlawfully seized. (Doc. 37, p. 2). Specifically, Defendant asserts that the Government used "illegal power tactics" to gain control of his assets. (Doc. 37, p. 2). This assertion (for which the Defendant did not provide supporting facts or case law) does not contemplate a defect in the Indictment that would warrant dismissal of the underlying charges.

Defendant's assets were lawfully seized pursuant to a federal seizure warrant issued by the Court on May 4, 2020.[4] *See* (Doc. 45); (Doc. 115). At the time Defendant's

---

[3] Defendant will also have the opportunity to raise a Rule 29(a) motion "challenging the sufficiency of the evidence to convict" at the close of the Government's case-in-chief, and at the close of all of the evidence. *United States v. Hope*, 487 F.3d 224, 227 (5th Cir. 2007) (citing *United States v. Lucio*, 428 F.3d 519, 522 (5th Cir. 2005)); *See also* FED. R. CRIM. P. 29(a).

[4] If the court determines that there is probable cause to believe that the property would be forfeitable in the event of conviction and that a protective order will not be sufficient to assure the availability of the property for forfeiture upon conviction, then the court has the discretion to issue a pre-indictment seizure warrant. 21 U.S.C. § 853(f); *See also United States v. Real Property Located at 1407 North Collins Street, Arlington, Texas*, 901 F.3d 268, 273 (5th Cir. 2018) ("The Government may restrain property prior to trial when there is probable cause to think the property is forfeitable. . . . A grand jury indictment establishes probable cause to think a defendant committed an offense permitting forfeiture.") (citing *Kaley v. United States*, 571 U.S. 320, 340–41 (2014)).

motion to dismiss was filed, he did not have access to the seizure warrant in this case. However, on April 20, 2021, the seizure warrants, affidavits, and seizure return warrants for these assets were unsealed, and the United States was ordered to provide Defendant with copies of the aforementioned documents. *See* (Doc. 46).

The Indictment also contains a forfeiture allegation notifying Defendant that, if he is convicted of wire fraud or money laundering, he will be required to forfeit "any and all property that constitutes or is derived from the proceeds the defendant obtained directly or indirectly" as a result of these offenses. *See* (Doc. 1, p. 19–20). If Defendant is convicted, forfeiture of these assets is mandatory. 21 U.S.C. § 853(a)(1). If Defendant is not convicted, he can challenge the seizure of his assets in the pending civil forfeiture action filed by the United States. *See, e.g.* 21-CV-00129-JWD-SDJ.

### v.  Selective Prosecution

Defendant alleges that the Government targeted him for prosecution because he publicly spoke out against the United States Department of Justice following its investigation into the death of Alton Sterling, Defendant's cousin.[5] (Doc. 37, p. 3). The Court construes this as a motion to dismiss based on selective or vindictive prosecution under Rule 12(b)(2)(A)(iv).

In our criminal justice system, the Government retains broad discretion to prosecute individuals. *See Wayte v. United States*, 470 U.S. 598, 608 (1985). "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file

---

[5] The United States filed a Motion in Limine to exclude this line of questioning on July 8, 2021. *See* (Doc. 105).

or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978). Therefore, a selective prosecution claim is not a defense on the merits to the criminal charge, but instead, an independent claim that the prosecutor brought a charge for reasons forbidden by the Constitution. *United States v. Armstrong*, 517 U.S. 456, 463 (1996). A motion to dismiss is the proper vehicle for raising a claim of selective prosecution. The Court has the authority to dismiss charges which arise from selective prosecution. *See United States v. Jennings*, 724 F.2d 436, 445 (5th Cir. 1984).

To succeed on a claim of selective prosecution, a defendant must meet a "heavy burden." *Id.* (quoting *United States v. Johnson*, 577 F.2d 1304, 1308 (5th Cir. 1978)). First, a defendant must make a *prima facie* showing that he has been singled out for prosecution while others "similarly situated who have committed the same acts have not been prosecuted." *Id.* (citing *United States v. Tibbetts*, 646 F.2d 193, 195 (5th Cir. 1981)). Importantly, a defendant is required to make this showing before the Court can permit any discovery on the matter. *In re United States*, 397 F.3d 274, 284 (5th Cir. 2005).

Second, a defendant must demonstrate that "the government's selective prosecution of him has been constitutionally invidious." *Id.* Even if a defendant demonstrates that he was singled out for prosecution, "selective prosecution, absent some invidious element, may not be challenged." *Id.* at n. 12 (citations omitted). To show "invidiousness," a defendant must demonstrate "that the government's selective prosecution is actuated by constitutionally impermissible motives on its part." *Id.*

8

(citation omitted); *See also United States v. Young*, 231 F. Supp. 3d 33, 104 (M.D. La. Feb. 6, 2017) ("Thus, the Defendant must . . . demonstrate that the government's discriminatory selection of him for prosecution has been invidious or in bad faith in that it rests upon such impermissible considerations [such] as . . . the desire to prevent his exercise of constitutional rights." (quotation omitted)).

Defendant has not made any evidentiary showing, much less one supported by "clear evidence," to support this claim. *In re United States*, 397 F.3d at 284. Defendant has neither made a *prima facie* showing that he was singled out for prosecution while others similarly situated who committed the same crime were not prosecuted, nor demonstrated that the prosecution was constitutionally invidious in that it rested upon a desire to prevent his exercise of constitutional rights. Therefore, Defendant's motion is denied on this basis.

### B. Defendant's Second Motion to Dismiss

Defendant's second Motion to Dismiss (Doc. 59) alleges that he "was told by the Government this discovery had over 20,000 *pages* and it simply doesn't." (Doc. 59-1, p. 1) (emphasis added). Defendant asserts that "after, going pro-se [he] was given a hard drive that . . . doesn't come anywhere close to 20,000 *documents* after things [were] unsealed." (*Id.*) (emphasis added). Therefore, the Indictment "needs to be dismissed because it is tainted." (*Id.*).

Defendant alleges, in essence, a discovery violation. The remedy for a discovery violation is not dismissal of the Indictment. Instead, "any sanction imposed should be the least severe penalty necessary to ensure compliance with the court's discovery orders." *United States v. Dvorin*, 817 F.3d 438, 453 (5th Cir. 2016) (citing *United*

*States v. Garrett*, 238 F.3d 293, 298 (5th Cir. 2000)). The Court finds that there has been no discovery violation here. The Government has confirmed in court, on the record, on multiple occasions, that it has produced all available discovery. Defendant has confirmed on each occasion that he has received the discovery.

The Government in its opposition to this Motion provided some insight into the source of Defendant's confusion. It confirmed that it has produced 2,445 *files* in discovery to Defendant, which exceeds 20,000 *pages* of discovery. (Doc. 70, p. 3). This confirms what Defendant should know. In Defendant's motion to declare his case complex, which was filed by his previous counsel, one of the reasons provided was the volume of discovery. (Doc. 18). On September 9, 2020, the Government provided Defendant with 9,243 pages of documents and 23 recorded jail conversations. On October 12, 2020, the Government provided an additional 10,485 pages of documents and 52 videos. (Doc. 18, p. 1). The Government made additional productions on October 15, 2020; October 30, 2020; November 5, 2020; February 19, 2020; March 5, 2021; May 14, 2021; and June 9, 2021. (Doc. 70, p. 2 at n. 1). Together, well over 20,000 pages of discovery—not documents—have been produced.

The Court is satisfied that no discovery violations have occurred, and on this basis, Defendant's Motion to Dismiss is **DENIED**.

### C. Defendant's First Motion to Quash

In this motion, Defendant appears to allege that he was improperly charged with the same offense multiple times in the Indictment, in violation of Rule 12(b)(3)(B)(ii), although he does not provide any evidence or reasons as to why he believes that to be the case. (Doc. 56, p. 2). The Government argues that it has

properly charged Defendant for each instance of conduct made punishable by law. (Doc. 61, p. 2).

"The rule against multiplicity stems from the 5th Amendment to the Constitution which forbids placing a defendant twice in jeopardy for one offense. The rule prohibits the Government from charging a single offense in several counts and is intended to prevent multiple punishments for the same act." *United States v. Kimbrough*, 69 F.3d 723, 729 (5th Cir. 1995). Courts generally look to the plain language of the statute when determining whether a specific course of conduct constitutes one or more separate crimes. *See id.* at 730.

Defendant has been charged with nine counts of wire fraud. The Government argues that "[t]he wire fraud statute, by its plain language, expressly punishes each wire transmission as a separate crime." (Doc. 61, p. 3) (citing *United States v. Lemons*, 941 F.2d 309, 318 (5th Cir. 1995)). The Government has identified nine separate instances between December 2017 and September 2018 where Defendant allegedly "caused an interstate wire communication to be transmitted . . . in connection with the submission of a FAFSA[6], which contained false material information." (Doc. 1, p. 17–18). The Fifth Circuit has unequivocally held that "[e]ach separate use of wire communication constitutes a separate offense under section 1343." *Henderson v. United States*, 425 F.2d 134, 138 n. 4 (5th Cir. 1970).

Similarly, the Fifth Circuit and other circuits have found that an individual who fraudulently "obtains" federal funds on multiple occaisions can be charged with

---

[6] Free Application for Federal Student Aid.

multiple counts of financial aid fraud in violation of 20 U.S.C. § 1097(a). *See United States v. Strain*, 78 F. App'x 975, 976 (5th Cir. 2003) (per curium); *United States v. Ezeta*, 752 F.3d 1182 (9th Cir. 2014); *United States. v. Gibson*, 770 F.2d 306, 307 (2d Cir. 1985).

Therefore, because Defendant has not been improperly charged multiple times in Counts One through Thirteen of the Indictment, Defendant's Motion is **DENIED**.[7]

### D. Defendant's Second Motion to Quash

In his motion, Defendant argues that he has "evidence that count 14 on the Indictment should be removed." (Doc. 74-1, p. 2). Count Fourteen of the Indictment charges that, on or about March 19, 2019, Defendant "knowingly engaged and attempted to engage in monetary transactions involving criminally derived property" in violation of 18 U.S.C. § 1957 by withdrawing $256,000 from his Chase bank account. (Doc. 1, p. 18).

Defendant alleges that he "received a letter after multiple calls telling [him] to come and remove [his] money from Chase Bank," and that if he did not follow the instructions, Chase "would have sent a check for the full balance inside [his] account on April 6, 2019 in which [he] will still have done the same thing, which is deposit the money into an account that is owned by [him]." (Doc. 74-1, p. 1). In support, Defendant relies on an unverified, undated letter from Chase Bank entitled "Deposit Account Closure Information," that purports to inform Defendant that his account

---

[7] Further, as the Government notes in its opposition, the proper remedy for the duplicate counts is the dismissal of the duplicate counts only, not dismissal of the entire Indictment. (Doc. 61, p. 4) (citing *Lemons*, 941 F.2d at 318).

was subject to closure and that included procedures that Chase recommended Defendant take prior to April 6, 2019. (Doc. 74-2, p. 1).

"The elements of money laundering, in violation of 18 U.S.C. § 1957(a), are: (i) property valued at more than $10,000 that was derived from a specified unlawful activity; (ii) the defendant's engagement in a financial transaction with the property; and (iii) the defendant's knowledge that the property was derived from unlawful activity." *United States v. Alaniz*, 726 F.3d 586, 602 (5th Cir. 2013) (citation omitted). The Fifth Circuit is clear that "the *mens rea* element of the offense does not extend to whether the defendant knowingly laundered the funds, only whether the defendant knew the funds were illicit and engaged in a 'financial transaction' with them regardless." *Id.* at n. 6. Therefore, the Government must show that Defendant derived more than $10,000 from a specified unlawful activity (in this case wire fraud), that Defendant engaged in a financial transaction with this property, and that Defendant knew the property was derived from unlawful activity.

The Government asserts that Defendant's motion seeking to dismiss Count Fourteen improperly "usurps the responsibility of the trier of fact to determine culpability," and should be dismissed. (Doc. 90, p. 6). The Court agrees. The reason why Defendant removed the funds from his account is not evidence of a defect in the Indictment such that would warrant dismissal of this charge, but rather a defense to be brought at trial. Therefore, Defendant's motion to quash Count Fourteen of the Indictment is **DENIED**.

## III.    CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's Motions (Docs. 37, 56, 59, 74) are **DENIED**.

Baton Rouge, Louisiana, this _28th_ day of July, 2021

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

14